BENJAMIN GARLAND *versus* ROBERT HILBORN, JR.

Where hay was attached that grew on land which had been in the occupation of the debtor for about six years under a sealed agreement, that when the debtor should have paid to the owner the price agreed upon for the farm, that it should be conveyed to him, and that the produce should be the owner's until such payment was made, but that the debtor should have the management thereof, and that whatever the same might net and be realized therefrom by the owner, should be credited towards payment for the farm; and the hay was during that time, cut by the tenant and put into the barn, and there attached as his property; *it was held*, that the hay was subject to attachment as the property of the tenant.

CASE against the defendant for neglecting to deliver five tons of hay, to be taken on an execution in favor of the plaintiff against one Dennin, the same having been attached by the defendant as the property of Dennin on a writ in favor of the plaintiff.

The agreement between Little and Dennin, referred to in the opinion of the Court, was in these terms.

" It is agreed between Edward Little and Simeon Dennin, Jr. that the produce on the farm said Dennin lives on, is to be Edward Little's until the farm is paid for, and said Dennin to have the management of the same, and whatever it nets, and is turned to said Edward, is to be credited towards payment for the place, and said Dennin hereby acknowledges, that two red steer calves and a sow are pledged to said Edward for the payment of Dennin's notes to said Little, and said Dennin is to have the care and management of them, and whatever they turn to and net, and is paid over to said Edward, is to be allowed in payment, on said Dennin's notes to said Little.

" Edward Little.

" July 11, 1840." <span style="float:right">" Simeon Dennin.</span>

*D. Dunn*, for the plaintiff, considered the law to be well settled in his favor by the cases, *Butterfield* v. *Baker*, 5 Pick. 522; *Bailey* v. *Fillebrown*, 9 Greenl. 12 ; *Turner* v. *Batchelder*, 17 Maine R. 257 ; *Sherburne* v. *Jones*, 20 Maine R. 70.

*J. C. Woodman*, for the defendant, contended that at the time of the attachment of the five tons of hay by the defend-

ant, the hay was not the property of Dennin, the debtor, as whose it was returned as attached, but was the property of Edward Little.   This furnishes a perfect defence to this suit. According to the written contract, the produce was not to be the property of Dennin but of Little.   Dennin was the mere agent of Little, and he was to allow the proceeds, after paying all expenses, towards the notes.   *Kelley* v. *Weston,* 20 Maine R.  232;  *Lewis* v. *Lyman,*  22  Pick.  437;  *D' Wolf* v. *Brown,* 15 Pick. 462.

The opinion of the Court was by

WHITMAN C. J. — The defendant as an officer attached, on mesne process, a quantity of hay as the property of one Dennin, of which he did not keep possession, so as to have it forthcoming to satisfy the execution, subsequently issued on a judgment obtained in the same suit.   His defence is, that the hay was not Dennis's, but was the property of one Edward Little.   It appears, that Little was the owner of the farm on which Dennin lived, and on which the hay was raised ; and that Dennin had entered into possession thereof about six years before the attachment, under an agreement by bond, that, when he should have paid the price agreed upon for the same, it should be conveyed to him.   It was, at the same time, agreed between Little and Dennin, " that the produce on the farm" should be Little's, until the farm was paid for, but that Dennin should " have the management of the same ;" and whatever the same might net, and be realized therefrom by said Little, should be credited towards payment for the farm. This agreement, afterwards, on the 11th of July, 1840, was reduced to writing, and signed by the parties.   The hay in question was a part of the produce of the farm, and was raised after the agreement was so reduced to writing.

The case comes before us upon an agreed statement of facts. The question raised is one of title.   Was the hay, when attached, the property of Little or of Dennin ?   If of Little, then the plaintiff is to become nonsuit ; if of Dennin, then judgment is to be entered upon default.

Whether property has vested in an individual, so as to become attachable for his debts, is often a question involved in difficulty. The circumstances connected with apparent ownership are of every shade of variety. This arises, not unfrequently from sinister purposes. Sales designed to be merely colorable, are but too common. To such sales the utmost semblance of genuineness will be given. And sales, also, that are *bona fide*, and intended to be absolute, by reason of some regard to the vendor's accommodation, or sympathy for his misfortunes, or some other cause, are left to be attended with indications of continued ownership in him. Cases have been, from the earliest times, continually arising, in which courts of justice have been employed in determining when property has, and when it has not passed from one individual to another. In the case before us, it is not to be denied, that there is very plausible ground for supporting either side of the controversy. The analogous cases cited by the counsel for the plaintiff, are deemed by him entirely conclusive in his favor; while those cited on the other side are deemed equally so for the defendant.

The cases of *Butterfield* v. *Baker,* 5 Pick. 522; *Bailey* v. *Fillebrown,* 9 Greenl. 12; and *Turner* v. *Batchelder,* 17 Maine R. 257, cited for the plaintiff, arose in reference to the rights of lessors, who had endeavored to secure their rents by a lien upon the products of the premises leased. But in each case it was holden, that, until actual delivery of the products to the lessors, no property therein passed, so as to be valid against the rights of creditors, who had caused the same to be attached. In the case of *Sherburne* v. *Jones,* also cited for the plaintiff, it seems only to have been decided, that the evidence offered did not sufficiently show property in the plaintiff. The three first cases show very manifestly, that there are difficulties in the way of securing to landlords an ownership in chattels to be produced, by agreements previously made with their tenants, so as to secure the same, without actual delivery, from the claims of the creditors of their lessees.

The case before us exhibits a tenancy upon condition, on the part of Dennin. While he continued to manage the farm in a husbandlike manner, and caused the net proceeds to be applied towards paying for it, it must have been the understanding of the parties to the agreement, that he should remain undisturbed in the occupation of the farm. Whatever he could raise thereon was the product of his labor and outlay, and of the farm conjointly, and was for his benefit. It was the net amount thereof, realized by Little, that was to be accounted for in payment for the farm. Such an agreement was undoubtedly valid between the parties, and, whenever violated by Dennin, his tenancy might be terminated. But when the rights of creditors came in conflict with the execution of such an agreement, something more would be requisite, than a simple reliance upon such an agreement, to so vest the property in the products in Little as to defeat the claims of the creditors of Dennin to have the same appropriated, by due course of law, to the discharge of their demands.

It is however said, in the first clause of the agreement, that the whole of the products was to remain the property of Little; but in the subsequent clause it appears, that such could not actually have been intended to be the case. It was only the net amount, actually realized, which was to be accounted for; and, until so accounted for, and credited, the consideration for it would not have passed from Little to Dennin. The agreement recognizes the management of it, until realized by Little, to belong to Dennin. The net amount, therefore, to be realized by Little, was to be what Dennin might find himself able to turn over, or appropriate to Little's use. And besides; the nature of the occupation renders it unquestionable, that the outlay and labor of Dennin was not wholly to be diverted from supplying his necessities in the meantime. The calls for subsistence for himself and family must be yielded to.

This case is very unlike that of *Kelly* v. *Weston*, cited for the defendant. There the tenant had agreed to cultivate a field of hops, and to cure and bag them for his landlord, in consideration that the latter would suffer the former, as whose

property the hops had been attached, to live on, and have the use of the residue of the farm, on which the hops grew. ' This was no otherwise than a hiring of the tenant, by the landlord, to perform for him a specific job of work, on a particular portion of his farm, and remunerating him by the use and occupation of another portion of it. The tenant had no interest in the hops. For his labor bestowed upon them he was otherwise compensated. He could not have appropriated any portion of them lawfully to his own use.

In the case of *Lewis* v. *Lyman*, next cited for the defendant, the hay attached as the property of certain lessees, was raised on a farm, which they occupied under and by virtue of a special agreement, that the lessor should stock the farm principally, the lessees furnishing a portion thereof; and that the hay, cut thereon should, thereupon, be expended in feeding the stock. It was not stipulated that any of the produce or income, before a division, of which according to the agreement, the hay was not to be susceptible, should be exclusively the property of the lessees. They had no other right or interest in the hay than to have it fed out to the stock on the place. It was holden in that case that the lessees had no attachable interest in the hay. In the case here, nothing is said in the agreement about having the hay spent upon the place. And, although it seems to have been the practice of Little to send his cattle there to consume, at least, a portion of the hay, yet Dennin, in his contract, was not bound in the management, which was expressly reserved to him, so to appropriate it. It would seem that he might have taken any other mode to obtain the net proceeds, to which Little was entitled, whether by sale or otherwise.

In the case of *D'Wolf & al.* v. *Brown*, cited for the defendant, the plaintiff's testator had agreed with his son, for a certain amount of compensation, to manage his farm, and to take his pay in the produce of it. In that case the Court held, that the property in the produce did not vest in the son till appropriated in payment of the amount stipulated to be paid. That, in effect, was but a case of hiring on the one side, and

Garland v. Hilborn.

agreeing upon a particular mode of payment on the other; a case very dissimilar to the one before us.

On the whole, from a review of the authorities cited, and of the reasoning upon which they are grounded, and from the nature of the tenancy of Dennin, and the structure of his agreement with Little, and taking into consideration the statement, that he was in destitute circumstances, and actually insolvent, we are led to the conclusion, that the agreement was made with an understanding, that Dennin should be allowed the enjoyment of the fruits of his labor to the extent of what his necessities might absolutely require for the subsistence of himself and family; and to secure as far as might be practicable the appropriation of the surplus to reduce the amount agreed to be paid for the farm, and that this must have been what was meant by the net produce, which Little might realize to be allowed in payment, &c. In such case the property in the produce must have vested in the tenant, in the first instance, and so have remained until otherwise disposed of. The hay attached had not been delivered over to Little, or appropriated to his use, so that he could be made accountable to Dennin for its value towards the demands which Little held against him. The defendant, therefore, must be defaulted, and judgment must be entered for the value of the five tons of hay at seven dollars per ton, as agreed by the parties, with damages for the delay in obtaining satisfaction of the plaintiff's execution against Dennin equal to six per centum per annum from the time it became returnable.